643 So.2d 394 (1994)
STATE of Louisiana
v.
Burnell CHAPMAN, Jr.
No. CR93-1524.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1994.
Paul Peter Reggie, Lake Charles, for State of Louisiana.
Carl Arthur Leckband Jr., Lake Charles, for Burnell Chapman Jr.
Before YELVERTON and COOKS, JJ., and BERTRAND[*], J. Pro Tem.
LUCIEN C. BERTRAND, Jr., Judge Pro Tem.
Defendant, Burnell Chapman, Jr., was indicted for second degree murder. After a jury trial, he was convicted of the lesser offense of manslaughter, a violation of La. *395 R.S. 14:31. Defendant was found to be an habitual offender in accordance with the provisions of La.R.S. 15:529.1 and was sentenced to serve 30 years with the Louisiana Department of Corrections, consecutive to any other sentences imposed for other convictions.

FACTS
On the night of July 2, 1992, the victim, Leslie Perry, and his roommate, Robert Shreve, were at a Lake Charles bar known as Wings. They spent several hours drinking, dancing, and visiting with other people. It was approaching 4:00 in the morning on July 3 when Shreve decided to leave, because, as he testified, Perry had been drinking quite a bit and was starting too much trouble. Shreve was going to leave in Perry's truck with three peopleTina Timmons, Robin Matte, and Robin's boyfriend, Burnell Chapman, Jr., the defendant.
As they were getting into the truck, Perry came over and told Shreve that he did not want the defendant riding in his truck or going to his apartment. Perry then obtained a baseball bat and started waving it in the air. When he hit the side of his truck with the bat, Shreve grabbed it and threw it into a nearby field. Chapman testified that when Shreve and Perry struggled over the bat, Perry was hit with it on the lower left side of his neck. This testimony, however, was not corroborated by any other witness and was not supported by the pathologist's testimony.
Shreve testified that after he threw the bat, he pushed Perry and then the defendant jumped into the fight. Defendant testified that he acted in self defense only after Perry approached him first, called his girlfriend a whore, and cursed at everyone around. Defendant stated that he did not know Perry at all and did not know what to expect from him concerning weapons. He admitted that when Perry got within arm's reach, he hit Perry. Defendant described the fight as follows: "I hit him with my left hand. It stopped him. I hit him with my right, he started falling, and while he was falling, I hit him again." After Perry was on the ground, defendant slapped him. Shreve testified that Perry did not hit anyone and that he, Shreve, actually started the fight because he was tired of Perry's drunken behavior.
Perry did not get up after defendant's punches knocked him down. Both defendant and Shreve thought Perry was knocked out and drunk. They dragged him to a car belonging to a friend of Perry's and put him on the rear floor board. Shreve testified that defendant slammed the door on Perry's feet, although defendant denied this. A bouncer from the bar then came out and took Perry from the car. He laid him on the ground and resuscitation attempts were made. An ambulance was called. Defendant, Shreve, and the two women then left the scene. They testified that they did not realize Perry was seriously injured.
Perry was taken to the hospital where he died in the intensive care unit on July 4. The coroner, Dr. Terry Welke, a pathologist, performed an autopsy and determined the cause of death to be from a basilar subarachnoid hemorrhage which was consistent with having been struck in the head and face, but was not consistent with having been struck by a bat. Perry's blood alcohol concentration was .3.

SUFFICIENCY OF THE EVIDENCE
In his first two assignments of error, defendant contends the jury verdict is contrary to the law and evidence and the trial judge erred in failing to grant his motion for a new trial. These contentions are premised on defendant's theory of the victim's cause of death and his self-defense argument. After reviewing the record, we find no merit to these assignments of error.
Concerning defendant's claim of self-defense, the record does not support the contention that Perry was the aggressor towards defendant. The testimony of Shreve, Timmons, and Matte establishes that Perry never went after defendant and that defendant voluntarily joined in the skirmish between Perry and Shreve. The State met its burden of proving beyond a reasonable doubt that defendant's attack on Perry was not committed in self-defense.
Even accepting as true defendant's version of the facts, his testimony does not establish *396 that his actions constitute justifiable homicide in accordance with La.R.S. 14:20. Defendant did nothing to avoid the conflict, and he admitted that the first punch stopped Perry, yet he continued to hit him even after he had fallen to the ground.
Turning next to the cause of death argument, we address defendant's contention that his actions were not proven to be a clearly contributing cause of Perry's death. He suggests that Perry could have been killed by the blow from the baseball bat when he and Shreve struggled over it.
Dr. Welke, the coroner, testified that the type of injury sustained by Perry could have been caused in one of several ways. First, a shearing of blood vessels may occur when there is a blow to the head because the skull, which is moved in one direction, turns faster than the brain. Second, if the head is thrown back, a hyperextension may occur which can also cause the shearing of blood vessels. Finally, if a hit is received right on the side of the neck, a tearing of blood vessels can occur due to the increased amount of pressure in the carotid artery. Defendant notes that Dr. Welke testified that he could not specify any of the blows to Perry's head as the cause of death, but he did say that three hits were sufficient to produce this injury.
Although defendant testified that Perry was hit with the baseball bat, this testimony was not corroborated by other witnesses or by the medical evidence. In fact, Dr. Welke testified that the bruising on the back of the head was not consistent with having been struck by a baseball bat. In rejecting defendant's argument that his actions did not cause Perry's death, the jury chose to believe the testimony of the eye witnesses and Dr. Welke, rather than defendant's testimony.
In a homicide prosecution, the State has the burden of proving beyond a reasonable doubt that the criminal agency of the defendant caused the victim's death. State v. Matthews, 450 So.2d 644 (La.1984). However, it is not essential that the act of the defendant should have been the sole cause of death if it hastened the termination of life, or contributed, mediately or immediately, to the death in a degree sufficient to be a clearly contributing cause. 450 So.2d at p. 646. In such cases, the defendant's act is considered to be the legal cause of death.
In the present case, the victim died of a basilar subarachnoid hemorrhage resulting from a blow to the head. Viewing the evidence in the light most favorable to the prosecution, we find the record supports the jury's conclusion that the defendant's conduct hastened the termination of the victim's life, or contributed to the victim's death in a degree sufficient to be a clearly contributing or legal cause of death. Accordingly, we find no merit to these assignments of error.

HABITUAL OFFENDER PROCEEDING
Defendant next argues the trial court erred in finding him to be a third felony offender. In this appeal and in the habitual offender proceeding below, defendant argued that he was not advised of his constitutional rights and did not voluntarily waive those rights in a 1984 Texas guilty plea for robbery which was used to enhance his sentence herein. Defendant filed a motion to quash the habitual offender bill based on these contentions. The trial judge denied defendant the opportunity to collaterally attack the Texas conviction, citing State ex rel. Martin v. State, 462 So.2d 637 (La.1985) and State v. Johnson, 582 So.2d 885 (La.App. 4th Cir.1991), writ denied in part, not considered in part, 605 So.2d 1357 (La.1992). The trial judge determined that there can be no collateral attack of a prior conviction. In light of more recent jurisprudence and legislation which is discussed infra, we find error in the trial court's decision.
In State v. Shelton, 621 So.2d 769 (La.1993), the Supreme Court addressed the question of whether the State submitted sufficient proof of a prior felony conviction in an habitual offender proceeding. The Shelton case reiterated the long standing rule that a court reviewing a prior guilty plea must determine if the defendant was informed of and specifically waived his three Boykin rights: the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. The Shelton court discussed the United States Supreme Court *397 case of Parke v. Raley, ___ U.S. ___, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), which upheld a Kentucky procedure for determining the validity of a prior guilty plea when the plea is used to find a defendant an habitual offender. Both Shelton and Parke approve of a shifting burden of proof that requires a defendant, when collaterally attacking a prior guilty plea, to bear the burden of proving a defect in the taking of the plea:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. [Footnote omitted.] If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State.
Shelton, 621 So.2d at p. 779. See also State v. Abbott, 634 So.2d 911 (La.App. 4th Cir. 1994), and cases cited therein.
This procedure is now a part of our statutory law. La.R.S. 15:529.1, the Habitual Offender Law, provides at D(1)(b):
Except as otherwise provided in this Subparagraph, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction alleged in the information was obtained in violation of the Constitution of Louisiana or the Constitution of the United States of America shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
Defendant complied with this procedure by filing a motion to quash in response to the bill of information.
At defendant's habitual offender hearing, the State offered into evidence certified copies of the judgment of the district court of Henderson County, Texas, a form listing the conditions of defendant's probation, and another document which included a waiver of rights signed by defendant. Defendant contends that these documents reveal that he was not fully advised of his constitutional rights. The waiver of rights form submitted into evidence contains the following statement:
In accordance with Art. 1.14 C.C.P., the Defendant now in writing and in open Court, waives any and all rights secured him by law, whether of substance, or of procedure, and states that any error which may have been committed is harmless.
The judgment entered by the Texas court states that the defendant waived his right to jury trial and appearance, confrontation, and cross examination of witnesses; it also reflects that the defendant was represented by counsel.
Neither the waiver of rights statement nor the Texas court's judgment indicate whether defendant was advised of his privilege against self-incrimination and whether he voluntarily waived that privilege. This reflects a defect in the Texas proceeding that may constitute an infringement of defendant's rights. Therefore, we conclude that defendant has met the burden of proving the allegations contained in his motion to quash. The burden of proving the constitutionality of the plea now shifts to the State.
In Shelton, 621 So.2d at p. 780, the court held that the State can meet its burden of proof by introducing a "perfect" transcript of the taking of the guilty plea or other evidence that the judge can weigh to determine "whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights."
*398 Accordingly, we must set aside the sentence imposed herein and remand for the trial judge to conduct an habitual offender hearing in accordance with the views expressed herein.
Defendant's remaining arguments addressed in his brief were not formally assigned as error and will not be addressed by this court.

DECREE
For the above and foregoing reasons, defendant's conviction is affirmed. Defendant's sentence is set aside, and the matter is remanded for rehearing of habitual offender status and resentencing.
CONVICTION AFFIRMED; SENTENCE SET ASIDE AND REMANDED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.