LB YENES, Judge.
The defendant Jerry Chapman requests a review of the trial court’s ruling which denied his application for post conviction relief as untimely.
Chapman asserts that he is entitled to post conviction relief because of newly discovered evidence in the supplemental police report which contained Brady material. Chapman now claims that he did not receive a fair trial because the state did not disclose exculpatory Brady material from the supplemental police report that related that Tammy Polk did not tell the police that she had witnessed the murder.
Chapman avers that he was unaware of the fact that the supplemental police report stated that Officer Williams stopped two detectives when they were leaving the Charity emergency room after the shooting, and introduced them to three women, including Tammy Polk. According to the police report, the two detectives interviewed the three females and learned that they were not on the scene when the victim Timothy Carruth was shot. Chapman complains that he was not aware of this information prior to trial, and therefore he was unable to prepare a defense. Chapman asserts that he was prejudiced because this information was contrary to Tammy Polk’s trial testimony in which she |2stated that she was an eye witness to the murder. He also complains that the state made false statements during voir dire and the opening statements.
Chapman’s writ application presents two issues: (1) whether the application is timely; and (2) whether he was prejudiced and did not receive a fair trial.
In the present case, the defendant styled his district court pleading as a motion for new trial. It would be time-barred under La.C.Cr.P. art. 851 absent a showing of due diligence, if it were treated as it is captioned. La.C.Cr.P. arts. 858, 854. ■
The characterization of a pleading is not controlling. Adams v. First Nat. Bank of Commerce, 93-2346 (La.App. 4 Cir. 9/29/94) 644 So.2d 219, unit denied 94-3053 (La. 2/3/95), 649 So.2d 411. The nature of the pleading must be determined by its substance, not its caption; this is especially true for a party representing himself. Fussell v. Reed, 95-0398 (La.App. 1 Cir. 11/9/95), 664 So.2d 1214. See also Polk v. Hunt, 282 So.2d 614 (La.App. 1 Cir.1973); State v. Higginbotham, 470 So.2d 648 (La.App. 1 Cir.1985).
In the present case, if the defendant’s claim or pleading is treated as an application for post conviction relief as- the trial court treated it, La.C.Cr.P. art. 930:8(A)(1) provides an exception to the three year time limitation based on new facts previously unknown to the petitioner or his attorney, but it does not establish a standard for determining when the exception is met, such as reasonable diligence toward discovery of the evidence (as in a motion for new trial). The exception of art. 930.8(A)(1) is analogous to a situation where the petitioner untimely raises a new claim, which is a repetitive application for post conviction relief under La.C.Cr.P. art. 930.4. Under art. 930.4(E) the dismissal of a repetitive application for post conviction relief is allowed “if Reraises a new or different claim that was inexcusably omitted from a prior application.” Under that article the court may order the petitioner to state the reasons for his failure, and if the failure is excusable, then the claim shall be considered. La.C.Cr.P. art. 930.4(F).
In Drew v. Collins, 5 F.3d 93 (5 Cir. (Tex.) 1993), certiorari denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 555 (1994), the federal appellate court applied the federal “abuse of the writ” standard in determining whether additional petitions for writ of habeas corpus may be dismissed for failure to raise the claim in a petition filed previously. When the abuse of the writ standard is asserted, the petitioner must show that he exercised reasonable diligence to include all the *506 grounds for relief in his initial habeas corpus petition.
Allowing a petitioner to assert a claim based on new facts which could have been discovered with reasonable diligence would permit him to circumvent the delay based on his own neglect. Petitioner’s failure to timely assert his claim may not be due to his inexcusable omission under La.C.Cr.P. art. 930.8(A)(1).
In State v. DiLosa, 94-2903 (La. 11/27/95), 662 So.2d 1040, where the defendant averred that he learned of a possible Brady claim after obtaining documents under the Public Records Act, the Louisiana Supreme Court remanded the case to the trial court for a hearing to determine whether the defendant proved or the state conceded that his claim rested on facts unknown to him or his counsel, and if so, whether the state suffered prejudice.
The Louisiana Supreme Court denied a defendant’s writ application in State ex rel. Wade v. State, 95-0558 (La. 9/13/96), 679 So.2d 94, without | ¿remanding the case to the trial court for a hearing. Chief Justice Ca-logero dissented, stating that he would grant partial relief by requiring the district court to conduct a hearing to determine whether the state suffered any prejudice to its ability to respond because of the delay involved. The Chief Justice noted:
... Art. 930.8(A)(1) does not supply a specific time period, nor does it specify whether it requires a showing of due diligence by the petitioner or his attorney in attempting to procure new evidence. Instead, art. 930.8(A)(1) acts in concert with the general provision of art. 930.8(B), which allows for dismissal of both timely and untimely (but excepted) post-conviction-relief applications upon a showing of material prejudice to the state’s ability to respond to the allegations in the petition. That showing is to be made in “a hearing limited to that issue.” Thus, if relator in the instant case has demonstrated the existence of a fact of which he did not have knowledge, under the terms of the statute his claims would require a hearing in the district court as to what prejudice to the state’s ability to respond, if any, the delay has caused.
Accordingly, I would grant relator partial relief by issuing an order remanding to the district court to determine: whether the relator’s claim meets the threshold tests of La.C.Cr.P. arts. 928 and 929, and whether the relator has proved that his claim rests on facts not known to him or his attorney. If the state did not show prejudice from the delay to its ability to respond to the petition’s allegations, the court would be required to adjudicate the merits of the relator’s claim. [Footnote omitted.]
Id., 95-558, p. 1-2, 679 So.2d 94, 94-95.
In that case the majority did not require that the case should be remanded for a hearing. The requisite of a hearing is not mandated in all cases.
In State ex rel. Cormier v. State, 95-2208 (La. 10/4/96), 680 So.2d 1168, the Louisiana Supreme Court held that the district court was required to determine whether a claim would entitle the defendant to relief and whether a hearing was necessary, and if so, the district court was required to hold a | shearing. Initially the trial court must decide if a hearing is necessary; however, a hearing is not mandatory.
In State v. Owen, 95 00407 (La.App. 3 Cir. 6/29/95), 663 So.2d 46, the case involved a fact situation similar to the present case. The defendant in Owen did not seek public records until almost ten years after his conviction was final and nearly three years after the time limitation under Article 930.8 had expired. The appellate court stated:
... We find, as did the trial court, that the relator failed to take reasonable steps to pursue his claims within the statutorily mandated filing deadline and that relator has therefore stated no ground warranting an exception to article 930.8 time limitations. Further, article 930.8 does not require the trial court notify the relator and afford him an opportunity to respond prior to dismissing the relator’s application as untimely.
Id., 95 00407, p. 1, 663 So.2d 46.
*507 This court agrees with the Third Circuit’s determination to dismiss an application for post conviction relief under La.C.Cr.P. art. 930.8 where the defendant does not state adequate grounds for an exception to art. 980.8 time limitations without requiring that relator be given an opportunity to respond. Whether or not relator may be given an opportunity to respond is discretionary rather than mandatory under the totality of circumstances of each ease.
In the present case, Chapman has not shown that his failure to timely raise the claim is excusable. The defendant alleges only that he obtained the District Attorney’s records “on or about September 19, 1996” but gives no explanation for why he had not obtained the records in a timely fashion. In his supplemental brief, Chapman only states that “several years ago petitioner requested tuhat ever [sic] reports the police had in its files.” In his additional brief objecting to the State’s answer, Chapman asserts that “your Honorable |6Court” denied his request for documents on September 19, 1989. It appeal's that at that time, the trial court rather than this appellate court denied Chapman’s motion for failure to state a particularized need. Chapman does not establish if he stated a reason for his request for his production of documents.
Chapman avers that the District Attorney caused the delay in fifing the claim. He states that he sued Harry Connick in trying to obtain the requested documents in August 1985; however, considering that Chapman did not provide a copy of his petition, the date and claim are unsubstantiated. ■ Furthermore, if the defendant raised this claim in August 1985 before his conviction, he does not adequately explain the delay in asserting his claim now after more than three years from the date that his conviction became final.
The Public Records Act was interpreted to allow defendants full access to district attorney’s files and supplemental police reports for purposes of posteonviction relief in Lemmon v. Connick, 590 So.2d 574 (La.1991). La.R.S. 44:3 fists exceptions to the general rule that records held by public bodies are public. The Louisiana Supreme Court noted that exempted from disclosure are “[rjecords pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled.” Id., 590 So.2d at 575. The Louisiana Supreme Court held that posteqnvietion relief is not “criminal litigation” within the meaning of the Public Records Act under La.R.S. 44:3. Therefore, the .district attorney’s files and supplemental police report are public and subject to disclosure in a claim for postconviction relief.
Chapman provides a copy of Harry Con-nick’s memorandum in opposition to writ of mandamus which appears to have been filed in. October 1995. In that ^memorandum Connick states that the District Attorney’s Office has the discretion to furnish free copies from its records under La.R.S. 44:32 C(2). Carmona v. Wallace, 94-0885 (La.App. 4 Cir. 11/17/94), 645 So.2d 1300; Foster v. Kemp, 94-1228 (La.App. 1 Cir. 6/23/95), 657 So.2d 681. From this excerpt, there is no showing that Connick failed to provide access to the documents but only that Connick raised the claim that the District Attorney’s Office had the discretion not to provide free copies of the documents.
Chapman attaches a copy of No. 94^0044 in which the Louisiana Supreme Court ordered the district court to act on his motion for documents. This order is dated February 4, 1994. Without additional information Chapman does not show what he included in his claim for documents or that a delay in making his claim in 1994 was justified.
Chapman does not provide sufficient information concerning when he made the request or when he received the police reports. The defendant only states that he was unaware that the police report contained Brady material, and was advised by an inmate “who appeared to have knowledge of the legal system” to request the police reports. The relator is relying on the supplemental police report, which is a document in the custody of the New Orleans Police Department. The relator does not adequately explain why he never obtained or attempted to obtain it in a timely fashion. Defendant’s contention *508 raised over ten years after his conviction is untimely.
Furthermore, Chapman now claims that he was prejudiced because he did not have access to the exculpatory Brady material in the supplemental police report. However, the discrepancy of whether or not Tammy Polk was an eye witness to the crime was apparent at trial. Beginning on page 4 of his original | sbrief supporting his motion for new trial dated April 28, 1997, and filed in this court on May 1, 1997 the defendant states:
The prosecutor had misled the defense in its opening statement, in that the prosecution is required to give an opening statement, to sketch-out what it intends to prove at trial, but contrary to the prosecutor’s opening statement Tammy Polk testified that she did in fact view the crime and saw the shooting itself. To the defense, this is effect constituted a surprise.
The prosecutor’s failure to assist the defense by disclosing information that might have been specifically helpful. in cross-examination of its witness was in violation of movant’s rights. See, State v. Davis, 399 So.2d 1168 (La.1981).
* * * * * *
In the opening statement “voir dire”, the prosecutor alluded to the fact that no identification' — there was [sic] no eye-witnesses, and that he ‘the defendant’ cold-bloodedly [sic] and without legal provocation shot and killed an individual by the name of Timmie Carruth, shooting him approximately five times. (Tr.Trans. pp. 10-11)[.] And, you will hear from a woman — a woman by the name of Tammy Polk, who was a friend of the victim, Tim-mie Carruth, and we told you during “voir dire’ that we did not have an eyewitness, and this is as close to an eyewitness as you’re going to get. She will tell you what happened on that day, on that corner of Washington and Willow Street at approximately eleven o’clock, twelve noon. She will tell you, how this man coldbloodedly [sic] gunned down her friend Timmie Car-ruth. To obtain a conviction, the prosecutor through Tommy Polk presented perjury testimony....
The defendant further states that:
The question arises as to whether or not the prosecutor knew that Tammy Polk was presenting false testimony. It can be assumed he was aware pursuant to the fact that he prepared his witness, [sic]
This unanswered question may best be determined at a hearing on the motion of your movant, where an examination of the facts and evidence disclosed, may be resolved, but at any rate your movant avers that he is entitled to a new trial when it has been |9made clear that he did not receive a fair trial within the meaning of the Sixth Amendment, when the prosecutor withholds favorable information from the defense and allows its witnesses to present false testimony centered at the heart of the ease as the following testimony of Tammy Polk reveals:
Note: In cross-examination of Tammy Polk by Defense Attorney (now district court judge) Calvin Johnson:
Q — Tammy, I am awfully confused. The third or fourth question by Mr. Williams was, did you see the man, who shot Timmie Carruth, and you said, “No”.
A — I said, No, I said—
Q — You said, no, you did not see the man, who shot Timmie Carruth:
A — Yes, I see the man, that shot him. How I’m sure — •
Q — You said, in the fourth question, or fifth question posed by Mr. Williams, you did not see the man, who shot Timmie Carruth.
A — I saw the man, who shot Timmie Car-ruth. I wouldn’t be here today.
Q — Did you tell the police that that day ?
A — I told the police that.
Q — Did the police bring you back any photos, or any other things for you to look at?
A — No, they didn’t.
Q — Did you tell the police in the hospital, when you were in the hospital, *509 that’s the man who shot Timmie Carruth?
A — No, I don’t remember talking to the police.
[Emphasis added by the relator/defendant.]
| ipAccording to Chapman’s original brief, the prosecutor related in his opening statement that “we did not have an eyewitness.” Further, on cross-examination, defense counsel questioned Tammy Polk on the fact that she had previously told Mr. Williams that she had not seen the man who shot Timmie Carruth. Tammy Polk then stated that she saw the man who shot the victim.
From this testimony it is evident that Tammy Polk initially did not reveal that she was an eye witness, but she then testified that she was an eye witness to the shooting at trial. Although the defense may have used the supplemental police report to show that originally Tammy Polk did not tell the police that she was an eye witness, the discrepancy in Tammy Polk’s testimony was apparent at trial, and the jury was aware of the difference in her testimony. If there were any error in the State’s failure to produce the supplemental police report, the error was harmless, and the defendant received a fair trial.
Accordingly, we affirm the trial court’s ruling which denied the defendant’s application for post conviction relief.

WRIT GRANTED; RELIEF DENIED.

MURRAY, J., concurs with written reasons.