746 So.2d 24 (1999)
STATE of Louisiana, Plaintiff-Respondent,
v.
Jack OBNEY, Defendant-Relator.
No. K99-592.
Court of Appeal of Louisiana, Third Circuit.
August 11, 1999.
*25 Douglas Paul Moreau, District Attorney, 19th Judicial District Court, Baton Rouge, Dale Lee, for Plaintiff-Respondent.
Darrell Cvitanovich, for Defendant-Applicant.
Before: SAUNDERS, WOODARD and SULLIVAN.
PER CURIAM.
The Relator is now before the court requesting a rehearing regarding this court's ruling in State v. Obney, 99-592 (La.App. 3 Cir. 6/2/99) wherein this court held:
The trial court erred in denying the State's procedural objection to the timeliness of Relator's application for post-conviction relief. The Relator's 1998 application was filed more than eleven (11) years after Relator's conviction became final and more than seven (7) years after the time limits for filing for post-conviction relief expired. See La.Code Crim.P. art. 930.8 A(3). Relator's current petition is based on alleged "newly-discovered evidence," which Relator admits was available as the result of a published civil case tried in 1991, regarding the death of the three-year-old victim in Relator's case. We therefore find that Relator's 1998 application for post-conviction relief is untimely. See State v. Landor, 96-1097 (La.App. 3 Cir. 3/24/97); 688 So.2d 1360, writ denied, 97-1103 (La.11/26/97); 703 So.2d 642 and State ex rel. Glover v. State, 93-2330 (La.9/5/95); 660 So.2d 1189, La.Code Crim.P. art. 930 C.
Accordingly, the trial court's ruling denying the State's procedural objection to the timeliness of Relator's application is reversed, vacated, and set aside, and the case is remanded for further proceedings consistent with this ruling.
The Relator asserts that this court erred in finding that Relator failed to exercise due diligence in obtaining the documents upon which his current application for post-conviction is based. The Relator was convicted and sentenced in 1986 for the brutal stomping death of a three-year-old child. The Relator appealed his conviction and sentence, which were affirmed on review. State v. Obney, 505 So.2d 211 (La.App. 3 Cir.1987), writ denied, 508 So.2d 818 (La.1987). Subsequently, Relator filed three (3) applications for post-conviction relief, which were denied. Relator *26 had the assistance of an attorney in submitting at least one of these petitions. On December 16, 1998, almost twelve years after his conviction, Relator submitted a fourth application for post-conviction relief to the trial court. Following the ruling of the trial court ordering a hearing on Relator's application, the State sought review in this court. On review, this court held that Relator's application was untimely and that the trial court should have denied the petition accordingly.
An appellate court can notice the untimeliness of an application for post-conviction relief on its own motion. See State ex rel. Glover v. State, 93-2330 (La.9/5/95); 660 So.2d 1189. Further, adverse trial court rulings regarding the State's procedural objections are subject to appellate review. (See La.Code Crim.P. art. 930 C, requiring that such rulings be final before the merits of the case can be considered by the trial court.) Therefore the trial court's ruling denying the State's procedural objections was properly presented to this court for review, and this court has full authority to determine whether Relator's application for post-conviction relief is timely and whether the Relator states facts warranting an exception to the time limits for post-conviction relief contained in La.Code Crim.P. art. 930.8.
In applying for rehearing, the Relator asserts that there was no requirement that he exercise due diligence in discovering the facts forming the basis for his current application within the time limits for applying for post-conviction relief, and alternatively that Relator did exercise reasonable diligence in the matter.
The Relator asserts that the testimony of a State forensic witness in his case, which was given during a 1991 action for civil damages resulting from the death of the child victim in Relator's case, was at variance with the witness's trial testimony concerning the time of death. At trial, the witness testified that the fatal blow occurred within twenty-four hours of death, while the witness allegedly stated during the civil proceeding that the blow was delivered twenty-four to thirty-six hours prior to the death of the child. The Relator then asserts that this variation, if presented to the jury, would have resulted in a different verdict, as it may have been the case that other persons were in the presence of the child during the time the injuries were inflicted, and therefore the jury might have chosen to conclude that someone other that the Relator inflicted the fatal blow.
The Relator claims that documents detailing the 1991 civil trial testimony were "obtained" by Relator's family members at an unspecified date and "delivered" to certain attorneys "in the fall of 1997." In December of 1997, Relator's family members retained Relator's current attorney, who subsequently filed the instant application for post-conviction relief in December of 1998. In his rehearing request, the Relator asserts that the current application for post-conviction relief was "promptly presented" to the trial court, apparently asking this court to completely discount the more that twelve month delay between receipt of the civil trial documents by Relator's retained attorneys and submission of the post-conviction application to the trial court, as well as the six-year delay between the ruling in the civil case and the "presentation" of the trial documents to Relator's attorneys by Relator's family members.
Further, Relator claims that he "would not have been entitled to a copy of the civil trial by any theory," and that the testimony in question was "buried in dead files." (Br.p.5). The Relator makes this assertion despite the fact that the civil action was initiated in 1988, prior to the October 1, 1991 post-conviction filing deadline, and that the civil jury found the Relator fifty percent liable for the death of the child. See Gnagie v. DHHR, 603 So.2d 206 (La. App. 1 Cir.1992), writ denied, 608 So.2d 174 (La.1992). The Relator further alleges *27 that "the factual nature" as well as "the legal significance" of the trial testimony was "not communicated to" Relator, and that "no portion of the reported (civil) opinion discusses" the alleged inconsistent testimony.
In refuting these contentions, the State asserts that Relator essentially argues that his incarceration and lack of counsel resulted in the failure of Relator to "discover" the relevant civil trial testimony until December of 1998. However, we note that the testimony at issue is not "new," having been provided and available in 1991. It is, therefore the late discovery of the testimony and its effect on the timeliness of the Relator's post-conviction application that are at issue in the present case.
We first note that Relator bears the burden of proof that relief should be granted in his case. See La.Code Crim.P. art. 930.2. In this regard, Relator failed to offer any evidence concerning when or how the documents submitted to his attorneys in 1997 were obtained, or why they were not obtained within the post-conviction time period or a reasonable time thereafter. Relator appeared with his attorney at the hearing on the State's procedural objections, but called no witnesses and submitted no evidence to support his contentions. As the burden of proof in all post-conviction matters is on the Relator, the Relator failed to meet his article 930.2 burden regarding the civil trial testimony and the State's procedural objection should have been upheld on this basis.
Further, the Relator offered no proof that he exercised due diligence in procuring the civil trial testimony. We have consistently rejected the notion that an applicant's incarceration or lack of legal counsel are valid excuses for failing to comply with the article 930.8 time limits. A post-conviction applicant is not entitled to an attorney to file his petition unless so ordered by the trial court. See La.Code Crim.P. art. 930.7. The procedural time bars therefore clearly apply to unrepresented applicants, and any claim alleging late involvement of retained attorneys is irrelevant to a determination of the timeliness of Relator's application.
The supreme court has held that "late realization" that a trial error has occurred does not qualify as an exception to the article 930.8 time limits. See State v. Parker, 98-256 (La.5/8/98); 711 So.2d 694. In such cases, the disputed facts or legal errors are available to the applicant for submission in a timely manner, but were allegedly not discovered until expiration of the post-conviction deadline. The Parker court plainly ruled that such late discovery claims did not qualify for exceptions to the article 930.8 time limit. As the relevant civil testimony was available to Relator in 1991, we find that the late discovery of this information, some six (6) years after it became available, does not qualify for an exception to the post-conviction time limits.
We likewise reject the Relator's assertion that he was not "entitled to a copy of the transcript," of the civil proceeding and that this somehow excuses the delay in submitting his petition. We note that, unless otherwise ordered, documents in completed wrongful death civil cases are available public records and that Relator's relatives did in fact obtain copies of these documents at some unspecified point. The burden of proving his post-conviction assertions and exercising due diligence in pursuing claims belong to the Relator and cannot be circumvented by referring to the action or inaction of third parties. To hold otherwise would render the post-conviction time limits meaningless and permit applicants to simply avoid prescription by blaming non-parties for the failure to timely pursue and submit claims.
Additionally, we reject Relator's contention that there was no due diligence requirement in his case. This court has held that an applicant must seek the information upon which his claim is based within the post-conviction time period. See *28 State v. Owen, 95-407 (La.App. 3 Cir. 6/29/95); 663 So.2d 46 and State v. Landor, 96-1097 (La.App. 3 Cir. 3/24/97); 688 So.2d 1360, writ denied, 97-1103 (La.11/26/97); 703 So.2d 642. (The supreme court cited article 930.8 in denying writs in Landor, thereby supporting this court's ruling that information not sought in a timely manner does not qualify for an exception to the post-conviction time limits.) The Fourth Circuit Court of Appeal has also recently adopted a due diligence requirement for post-conviction applicants. See State v. Chapman, 97-967 (La.App. 4 Cir. 9/3/97); 699 So.2d 504, writ denied, 97-2600 (La.4/3/98); 717 So.2d 229, reconsideration denied, 97-2600 (La.5/29/98); 720 So.2d 337.
The clear, unambiguous language of La. Code Crim.P. art. 926 B(5) requires that applications for post-conviction relief shall include "all errors known or discoverable through the exercise of due diligence." It is irrefutable that Louisiana criminal code articles, including post-conviction articles 924, et seq., must be read in pari materia. To do otherwise in deciding whether the express, due diligence requirement of article 926 B(5) also applies to untimely applications for post-conviction relief would produce an absurd result. An applicant who complies with codal requirements and timely files his petition would be subject to dismissal for failure to exercise due diligence in discovering and including claims, while the untimely applicant, who failed to follow the law, would not be subject to such dismissal, and need only refute any prejudice to the State in rebutting the merits of the claims contained in the untimely application. In this regard, the assertion that the State has adequate redress to the alleged untimely filing of post-conviction relief applications by simply claiming prejudice as a result of the delay fails to survive careful scrutiny.
If an applicant such as the Relator, who has had an appeal and several previously-denied post-conviction applications, is aware of available information upon which a new petition could be based, he would be encouraged by such an interpretation to withhold filing of such a petition until after the post-conviction deadline passed. If he timely obtained the material and timely filed the new application, the State could object to the petition as successive and the trial court could deny the application on that basis, and Relator's lack of diligence in pursuing the claim would be a relevant factor supporting dismissal. See La.Code Crim.P. art. 930.4 E. However, once the time delays for filing for post-conviction relief have run, the same information, which was available to the petitioner within the three-year post-conviction period, would support an application which could not be denied as untimely or successive, absent prejudice to the State. The Relator would simply have to allege that he discovered the previously-available information after the time limits had run and the State's procedural remedies would be foreclosed. The Relator could prove such a claim, thereby qualifying for an exception and defeating the State's procedural objections, by simply submitting his complete lack of effort in seeking out the material or otherwise pursuing his claim in a timely manner.
Further, each and every document or other piece of "new evidence," i.e., in the Relator's possession during the post-conviction period or available to the diligent applicant, could be submitted as the basis for a separate untimely application. The Relator could simply wait till the time limits expired, file a new petition based on each item, litigate the claim, and then file another application based on the next item. Under Relator's interpretation of the law, it is irrelevant when the information is obtained or whether it could have been timely obtained by the exercise of reasonable diligence. The only relevant consideration is that the application is filed after the post-conviction deadline has passed. Such endless petitions, filed outside the post-conviction period, could never be denied as successive. In such instances, the *29 case would literally never be concluded, and the Relator would be granted a carte blanche right to file as many applications as he wished, whenever he wished and both the trial and appellate courts would be deprived of any control over such successive petitions.
It is axiomatic that the criminal code must be interpreted by courts utilizing recognized civilian principles and that such rulings should produce consistent, logical results that reflect the intent of the legislature, so far as that intent is discernable. The Relator's contention that the untimely petitioner has greater rights than the timely applicant is neither logical nor in keeping with the spirit of the post-conviction articles, which are designed to promote finality of conviction while permitting exceptions in cases where applicants have otherwise diligently pursued their claims. See Glover, 660 So.2d at 1196.
Finally, both the Relator and the State refer extensively in brief to the merits of the Relator's claim that the variation in the testimony of the State's witness would have produced a different result at trial. As noted in Relator's appeal, the State's witness testified that the blow struck by the Relator was the cause of death of the three-year-old child. Further, the physician called by the defense also stated that the blow contributed to and hastened the child's death.
At the Relator's trial, evidence was introduced confirming that Relator admitted to stomping the helpless child in the abdomen. The State was not required to prove that the violent act of Relator was the sole cause of death, but only that it hastened or clearly contributed to the child's death. See State v. Shanks, 97-1885 (La.App. 1 Cir. 6/29/98); 715 So.2d 157, State v. Chapman, 93-1524 (La.App. 3 Cir. 10/5/94); 643 So.2d 394, writ denied, 94-2724 (La.2/9/95); 649 So.2d 420, State v. Matthews, 450 So.2d 644 (La.1984), and State v. Wilson, 114 La. 398, 38 So. 397 (1905). As both of the experts testifying at Relator's trial agreed that the Relator's actions either directly caused, hastened, or contributed to the untimely demise of the young child, this evidence fully supported the guilty verdict to the charge of second degree murder.
Accordingly, we deny Relator's application for rehearing.